UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JANE DOE I, et al.,                      )
                                         )
    Plaintiffs,                          )
                                         )
  vs.                                    )   No. 4:08-CV-1518 (CEJ)
                                         )
JEREMIAH W. NIXON, et al.,               )
                                         )
    Defendants.                          )

### ORDER

This matter is before the Court on plaintiffs' motions for attorneys' fees and to amend the order requiring plaintiffs to bear the costs of this action. Defendants oppose plaintiffs' motions and the issues have been fully briefed.

### I.   Background

Plaintiffs filed this action on October 3, 2008 to enjoin defendants--municipal and state law enforcement officials--from enforcing Missouri's newly enacted Halloween sex offender statute, Mo. Rev. Stat. § 589.426,[1] which went into effect on August 28, 2008 (the "Halloween statute"). With their complaint, plaintiffs also filed a motion for a preliminary injunction to prevent defendants from enforcing the Halloween statute on October 31, 2008. On October 27, 2008, the Court granted plaintiffs' motion and

---

[1] The statute provides: "Any person required to register as a sexual offender under sections 589.400 to 589.425 shall be required on October thirty-first of each year to: (1) Avoid all Halloween-related contact with children; (2) Remain inside his or her residence between the hours of 5 p.m. and 10:30 p.m. unless required to be elsewhere for just cause, including but not limited to employment or medical emergencies; (3) Post a sign at his or her residence stating, "No candy or treats at this residence"; and (4) Leave all outside residential lighting off during the evening hours after 5 p.m . . . Any person required to register as a sexual offender under sections 589.400 to 589.425 who violates the provisions of subsection 1 of this section shall be guilty of a class A misdemeanor."

entered an order enjoining defendants from enforcing Sections 589.426 (1) and (2). Defendants filed an interlocutory appeal and emergency motion to stay the Court's preliminary injunction. On October 30, 2008, the Eighth Circuit issued an order summarily granting defendants' motion and staying the preliminary injunction. On November 6, 2008, the Eighth Circuit dismissed defendants' interlocutory appeal at plaintiffs' request.

On June 29, 2009, plaintiffs filed their second motion for a preliminary injunction. On August 14, 2009, plaintiffs and defendants Daniel White and Robert Boydston filed a joint stipulation stating that they consent to the entry of a preliminary injunction preventing enforcement of the Halloween Statute during the pendency of plaintiffs' action. The stipulation also contained an agreement that the parties to stipulation would bear their own "costs and expenses herein incurred or expended in the prosecution and/or defense of this matter." (Doc. #209). On September 25, 2009, the Court issued an order granting the motion of defendants Robert McCulloch and Tim Fitch to abstain under R.R. Comm'n of Tex. v. Pullman Co., 312 U.S. 496 (1941) and staying all proceedings in this matter pending the Missouri Supreme Court's decision in F.R. v. St. Charles County Sheriff's Department, 301 S.W.3d 56 (Mo. 2010) (en banc).

The F.R. decision was issued on January 12, 2010 and held that the Halloween statute violated the Missouri Constitution as applied retrospectively to sex offenders convicted prior to the enactment of the Halloween statute. Id. Defendants represented that they would not seek to enforce the Halloween statute against plaintiffs following F.R. and requested that plaintiffs' complaint be dismissed. On October 27, 2010, the Court dismissed plaintiffs' complaint as moot, finding that the

Halloween Statute had been held unconstitutional as applied to plaintiffs by the Missouri Supreme Court's decision in F.R. Doe v. Nixon, NO. 4:08-CV-1518 CEJ, 2010 WL 4363413 *2 (E.D. Mo. 2010) (Doc. #222).  The Court also dismissed plaintiffs' claim for nominal damages because they had not alleged that any defendant actually enforced the Halloween statute against plaintiffs and their theory of harm as to how the Halloween statute affected them on the two days it was could have been enforced was too speculative.  Id. at *4.

On October 27, 2010, the Court dismissed the action as to all defendants and ordered plaintiffs to pay the costs.

Plaintiffs now seek to alter or amend the October 27, 2010 judgment arguing that it was a manifest error of law to treat defendants as the prevailing parties. Plaintiffs also seek attorneys' fees under 42 U.S.C. § 1988 based on this same argument.

II.   Discussion

Plaintiffs' motions raise the difficult question of who should bear the cost of preventing the enforcement of a criminal statute that all parties now agree is unconstitutional as applied to plaintiffs.  "Parties to a lawsuit generally must bear their own costs . . ." Advantage Media, L.L.C. v. City of Hopkins, Minn., 511 F.3d 833, 838 (8th Cir. 2008).  Section 1988, however, is an exception to this general rule and states, in relevant part: "In any action or proceeding to enforce a provision of section . . . 1983 . . ., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . ."  42 U.S.C. § 1988.  Similarly, Rule 54(d)(1) states "[u]less a federal statute, these rules, or a court order provides otherwise, costs---other than attorneys' fees---should be allowed to the

prevailing party." Fed. R. Civ. P. 54(d)(1).

## A. Prevailing Party Analysis

As recently explained by the Eighth Circuit,

> The test for prevailing party explained by Supreme Court is that "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111-12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); see Texas State Teachers Ass'n v. Garland Indep. School Dist., 489 U.S. 782, 792-93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) ("The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute."). The Supreme Court refined this standard in [Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human, 532 U.S. 598 (2001)] when it rejected the "catalyst" theory, which had been endorsed by all but one of the circuit courts and which permitted a plaintiff to recover fees if its lawsuit achieved the desired result through a voluntary change in the defendant's conduct. 532 U.S. at 602, 605, 121 S.Ct. 1835. The Court held instead that a party must obtain a judicially sanctioned material alteration of the legal relationship between the parties to the lawsuit to achieve prevailing party status. Id. at 604-05. Surveying its past cases the Court determined that enforceable judgments on the merits and consent decrees create the requisite material alteration in the parties' legal relationship to achieve prevailing party status. See id. at 603-04, 121 S.Ct. 1835.

Advantage Media, L.L.C. v. City of Hopkins, Minn., 511 F.3d 833, 836-37 (8th Cir. 2008). "[A] preliminary injunction can in some instances carry the judicial imprimatur required by Buckhannon to convey prevailing party status." Id. at 837 (referring to Buckhannon, 532 U.S. 598 and citing Northern Cheyenne Tribe v. Jackson, 433 F.3d 1083, 1086 (8th Cir.2006)). However, a plaintiff that obtains "a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case," is not a prevailing party under 42 U.S.C. § 1988. Sole v. Wyner, 551 U.S. 74, 83 (2007).

Plaintiffs contend that they, not defendants, should be considered the prevailing

parties in this action. In support, they point to the preliminary injunction preventing enforcement of the Halloween statute on October 31, 2008. They also argue that the Court's October 27, 2010 dismissal order constituted a "judicially sanctioned admission" by defendants that the Halloween Statute could not be constitutionally applied to plaintiffs. (Doc. #287). Defendants, on the other hand, point out that the preliminary injunction ordered by the Court on October 27, 2008 was stayed by the Eighth Circuit's October 30, 2008 order and, thus, never materially altered the parties' relationship. They also claim that the October 27, 2010 order dismissing this action at defendants' request did not create any judicially enforceable rights and cannot serve as a basis for an award of attorneys' fees.

The Court finds that plaintiffs were the prevailing parties in this case. The preliminary injunction they obtained on October 27, 2008 was a judicially sanctioned alteration of the parties' rights. Unlike the injunction in Sole, it was never "reversed, dissolved, or otherwise undone by the final decision in the same case." Sole, 551 U.S. at 83. Nor does the fact that the Court granted defendants' motion to dismiss this case as moot undermine plaintiffs' status. While a dismissal on the merits may convey prevailing party status on a defendant, cf. E.E.O.C. v. Ceridian Corp., Slip Copy, 2009 WL 1458278 (D. Minn. 2009) (voluntary dismissal with prejudice is decision on the merits; it materially alters the legal relationship between the parties by precluding plaintiff's claims arising out of the same underlying operative set of facts), a dismissal based upon mootness is a finding that the Court lacks subject matter jurisdiction and does not preclude plaintiff from asserting the same claims in future litigation. Fed. R. Civ. P. 41(b) (dismissal for lack of subject matter jurisdiction does not operate as an adjudication on the merits). As such, the plaintiffs won the only "battle" that was

determined on the merits and would have won the war but for the doctrines of avoidance and abstention in combination with defendants' wise retreat.  See Sole, 551 U.S. at 86 ("A plaintiff who "secur[es] a preliminary injunction, then loses on the merits as the case plays out and judgment is entered against [her]," has "[won] a battle but los[t] the war." (quoting Watson v. County of Riverside, 300 F.3d 1092, 1096 (9th Cir. 2002).

Defendants argue that this case is distinguishable from a closely related decision from the Western District of Missouri, Doe v. Crane, Slip Copy, 2010 WL 3927822 (W.D. Mo. 2010).  The Court disagrees and finds the analysis in Crane persuasive.  The Crane plaintiff, raising the same issues and represented by the same counsel as plaintiffs here, was considered the prevailing party after challenging the Halloween statute as unconstitutional.  Id.  Many of the defendants here were also named as defendants in Crane.  Id.  Like plaintiffs here, the Crane plaintiff was granted a temporary order enjoining enforcement of the Halloween statute before the Court stayed proceedings based upon Pullman abstention.  Following the Missouri Supreme Court's decision in F.R., the Crane Court also granted defendants' motion to dismiss on mootness grounds where all defendants represented that they would no longer seek to enforce the Halloween statute against plaintiff.  Based on these indistinguishable facts, the Crane Court determined that the plaintiff was the prevailing party and ordered defendants to pay the costs and reasonable attorneys' fees.  Id.

Defendants' rely heavily upon the fact the preliminary injunction obtained by plaintiffs on October 27, 2008 was stayed by the Eighth Circuit on October 30, 2008.  This reliance is misplaced.  The Eighth Circuit's stay was not a reversal on the merits and defendants' appeal of the October 27, 2008 preliminary injunction was dismissed

-6-

by the Eighth Circuit on November 6, 2008 upon plaintiffs' motion and defendants' consent. Defendants' argument that the October 27, 2008 preliminary injunction had no actual effect is refuted by the parties' subsequent behavior. Defendants never prosecuted any plaintiff for violating the Halloween statute despite continuing to threaten that they would enforce the statute and despite evidence that at least one plaintiff could have been charged with a violation.[2] Also, following the 2008 injunction, two defendants stipulated to the entry of a preliminary injunction enjoining them from enforcing the Halloween statute in 2009 in exchange for plaintiffs not seeking attorneys' fees and costs from those defendants. The Court need not delve into whether defendants' subsequent behavior was a result of the preliminary injunction or voluntary behavior; the fact that these changes followed a preliminary injunction entered *in this case* distinguishes it from the "catalyst" theory rejected in Buckhannon. 532 U.S. 598 (rejecting the theory that a plaintiff is a "prevailing party" if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct without a judicially sanctioned determination of the merits).

This Court's decision in Greenpoint Credit, L.L.C. v. Missouri Dept. of Revenue, Not Reported in F.Supp.2d, 2008 WL 151369 (E.D. Mo. 2008) is also indistinguishable and supports the Court's decision. Similar to here, the Missouri Supreme Court invalidated the statute challenged in Greenpoint while the related federal case was still pending. As such, the underlying dispute in Greenpoint was rendered moot and the parties reached a settlement except as to the issue of attorneys' fees. Regardless, the

---

[2]Plaintiff John Doe IV submitted an affidavit stating that he was not at his residence on October 31, 2008 as required by statute because he was attending his son's Bar Mitzvah in another state. (Doc. #180).

Greenpoint plaintiffs were awarded fees as the prevailing parties even though the "only relief . . . that [had] not been reversed is [the] agreed preliminary injunction." Id. at *8. The district court found that the agreed preliminary injunction was enough to distinguish Greenpoint from the catalyst theory rejected in Buckhannon because defendants' voluntary change of position not *solely* based upon the success of the state court plaintiff. Id. at *9 (citing Buckhannon, 532 U.S. 598 and summarizing cases from other circuits that have reached this same result). Likewise, defendants' voluntary retreat here was not solely based upon another plaintiff's success and plaintiffs are the prevailing parties for the purposes of 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d)(1).

    C.    **Reasonableness of Fees Amount**

As explained in Greenpoint,

> [T]he starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The party seeking fees must submit evidence to support the hours worked and the rate claimed. The district court is required to exclude from this initial fee calculation hours that were not "reasonably expended," i.e., that are excessive, redundant or otherwise unnecessary. Id. at 434.
>
> The Court is obligated to provide a "concise but clear explanation" of its reasons for a fee award. McCurry v. Tesch, 824 F.2d 638, 642 (8th Cir.1987). In determining the amount of fees, the Court is to consider twelve factors:
>
> (1) [T]he time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Greenpoint, 2008 WL 151369 at *10 (citing Hensley, 461 U.S. at 430 n. 3; Winter v. Cerro Gordo County Conservation Bd., 925 F.2d 1069, 1074 n. 8 (8th Cir.1991)).

Plaintiffs request that the Court award them attorneys' fees of $60,127.50 and $490.00 in costs. According to the affidavits of plaintiffs' counsel, attorney David Nelson expended 58 hours on this matter at a rate $300.00 per hour and attorney Anthony Rothert expended 189.9 hours at a rate of $225.00 per hour. (Doc. #287-2 and 287-3). The affidavits include itemized time entries that detail the work performed by both attorneys between September 24, 2008 and October 28, 2010.

Defendants object to the reasonableness of the fees requested by plaintiffs. Specifically, they claim that the hourly rates of the attorneys are too high and that the time expended after the September 25, 2009 order staying proceedings is unjustified. Alternatively, defendants argue that the time spent by plaintiffs' counsel after the F.R. decision was issued is unreasonable because any dispute after that point was merely about attorneys' fees and nominal damages. Finally, defendants make various arguments as to why an award of fees to plaintiffs would be unjust, claiming that they were merely attempting to enforce a newly enacted statute or even likening their situation to a catch-22.[3]

Addressing this last argument first, the Court finds defendants' general grievances based upon fairness unpersuasive. Similar concerns have been considered and dismissed by the Eighth Circuit:

> Presumably it will always be true that state officials enforcing a law or otherwise defending state action will believe, or at least hope, that the

---

[3]More precisely, defendants McCulloch and Fitch state: "Plaintiffs' position bars defendants from ever doing the right thing . . . Defendants are 'damned if they do anything and damned if they don't.'" (Doc. #302 at 12).

> law or action in question will be upheld against a federal constitutional attack. The point of § 1988 is that such officials proceed at their peril. If in fact they are wrong, and the law they are enforcing turns out to be invalid, § 1988 puts the financial burden on the state officials. The judgment of Congress is that the burden rests more properly on them than on the party who has been wronged by the application of an invalid law.

Carhart v. Stenberg, 192 F.3d 1142, 1152 (8th Cir. 1999), aff'd, 530 U.S. 914 (2000). Further, the comparative role each defendant played in this action also bears little significance in apportioning fees.  As further noted by the court in Carhart ,

> [D]efendant's] argument that he did not actively participate in the lawsuit and that he should not, therefore, be responsible for the attorney's fees, is equally without merit. His role in the proceedings may have been minor, but this does not excuse him from having to share in the actual costs. He relied on his co-defendants to present their defense of the constitutionality of LB 23, a statute he has indicated he would enforce, and he cannot now avoid helping to pay the prevailing party's attorney's fees.

Id.  The State enacted and defendants threatened to enforce a statute that, on its face, raised constitutional concerns.  Defendants must now bear the cost of that decision.

As to the rates charged by attorneys Nelson and Rothert, the Court finds their respective hourly rates to be reasonable in light of their considerable experience, the complexity of this case, the prevailing rates for attorneys of comparable experience in the St. Louis market and the rates other courts have deemed reasonable in similar instances. Cf. Doe v. Crane, Slip Copy, 2010 WL 3927822 (W.D. Mo. 2010) (awarding $2,512.50 in fees for 10 hours of legal service performed by the same attorneys).

As to the timing of the legal work performed by plaintiffs' counsel, the Court finds that the work performed after October 31, 2008 is not recoverable by plaintiffs. The preliminary injunction entered in favor of plaintiffs was only effective on October 31, 2008 even if it had not been stayed.  After this point, plaintiffs' counsels' efforts

did not lead to any additional material benefit to their clients. See Greenpoint, 2008 WL 151369 at *12. The affidavits submitted by attorneys Nelson and Rothert establish that they expended 86.2 and 28.2 hours in this matter, respectively, prior to October 31, 2008.

Even after limiting plaintiffs to recovering fees incurred before October 31, 2008, the amount claimed by plaintiffs remains excessive. Cf. Crane, 2010 WL 3927822 (awarding only $2,512.50 in fees for essentially the same relief as plaintiffs obtained here). Specifically, some of the hours claimed by attorney Rothert are not justified by the accompanying description of the work performed. For instance, Rothert states that he spent 10.3 hours on state court proceedings and traveling to and from Jefferson City, Missouri on October 30, 2008. (Doc. #287-3). He attributes another 6.5 hour entry on October 29, 2008 to work related to a "motion for state court relief." Id. Plaintiffs cannot recover for time expended in a related-but-separate case. See Greenpoint, 2008 WL 151369 at *12. In another entry, Rothert claims 7.8 hours on October 31, 2008 for "prospective clients; work on amended complaint." (Doc. #287-3). It is unclear if this entry is related to this case or a different proceeding and, regardless, it is too vague to justify 7.8 hours of billable time. Because the Court finds these specific entries unreasonable, plaintiffs are not entitled to compensation for them. Thus, a reduction of 24.6 hours will be applied.

Finally, defendants Daniel White and Robert Boydston argue that they should not be liable for any of plaintiffs' attorneys' fees based upon the stipulation for the entry of an agreed preliminary injunction they filed on August 14, 2009. The agreed upon preliminary injunction was never entered and the fees awarded by the Court were all incurred before October 31, 2008. As such, the Court does not believe this stipulation

shields defendants White and Boydston from joint and several liability for the fees awarded herein.  <u>Carhart</u>, 192 F.3d at 1152 (defendants are jointly and severally liable for attorneys' fees' awarded to a prevailing plaintiff under 42 U.S.C. § 1988).

\* \* \* \* \*

Based on the foregoing, the Court finds that the plaintiffs are the prevailing parties and are entitled to recover attorneys' fees for time expended prior to October 31, 2008 at the hourly rate charged by attorneys Rothert and Nelson as follows:

Anthony Rothert    61.6 hours @ $225/hour = $13,860.00
David Nelson       28.2 hours @ $300/hour = $8,460.00

The total amount of attorneys' fees to be awarded is $22,320.00.  In addition, plaintiffs are entitled to recover costs in the amount of $490.00.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for attorneys' fees' [Doc. #285] is **granted in part**.

**IT IS FURTHER ORDERED** that plaintiffs' motion to amend [Doc. #288] is **granted**.  The Order of Dismissal entered on October 27, 2010, is amended as follows: "**Defendants shall bear the costs.**"

**IT IS FURTHER ORDERED** that plaintiffs are awarded attorneys' fees in the amount of $22,320.00 and costs in the amount of $490.00.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 25th day of August, 2011.